**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00167-CMA-KMT

MARK D. BINGHAM,
TONY W. CHURCH,
JEFFERY C. DELANEY,
ANNETTE M. MONTOYA,
RICK L. PARKS,
AMBER D. SHETTRON,
STEWARD G. SQUIRES, and
CHARLES L. ZORIO,

    Plaintiffs,

v.

FIML NATURAL RESOURCES, LLC,
DEVONSHIRE INVESTORS (DELAWARE) LLC, and
DEVONSHIRE INVESTORS, LLC,

    Defendants.

---

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND
DEFENDANTS'REQUEST FOR ORAL ARGUMENT**

---

    This matter is before the Court on Plaintiffs' Motion to Remand. (Doc. # 10.) On December 21, 2012, Plaintiffs brought this action in the District Court for the City and County of Denver. (Doc. # 1, ¶ 1.) On January 23, 2013, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(c). They contend the action includes a claim arising under federal law because it falls within the scope of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.* (Doc. # 1, ¶ 8.) Therefore, Defendants contend that this Court has original jurisdiction over the action

under 28 U.S.C. § 1331.  (*Id.*)  In the instant motion, Plaintiffs argue that the action should be remanded to the state court for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 1447(c).  (Doc. # 10 at 1.)  For the following reasons, the Court denies Plaintiffs' motion.

## I.  **BACKGROUND**

Until recently, Plaintiffs worked for Defendant FIML Natural Resources, LLC ("FIML"), a subsidiary of Fidelity Investments.  (Doc. # 10 at 2.)  FIML offered certain high-level employees incentive compensation through participation in the Amended and Restated FIML Natural Resources Phantom Carried Interest Plan (the "CIP").  (*Id.* at 3.)  The CIP became effective on March 31, 2008.  (Doc. # 1-4 at 23.)

The CIP awarded participants "Pool Points," representing ownership interests in two separate pools of assets.  (Doc. # 10 at 3.)  Payouts from the CIP took the form of a payment by FIML of the purchase price for Pool Points.  (*Id.*)  Under Section 5(a) of the CIP, participants could elect to receive payment in full for all of their Pool 1 points by January 1, 2009.  (Doc. # 1-4 at 34.)  Plaintiffs aver that they each received a payout for the entirety of their Pool 1 points.  (Doc. # 10-1, ¶ 6.)  The timing of Pool 2 payments is governed by Sections 5(b) and 5(c) of the CIP.[1]  (Doc. # 1-4 at 35.)  Section 5(b) provides for periodic payments from each pool every third year after 2010 "equal to 80%" of the participant's purchase price.  (*Id.*)  Section 5(c) reserves the remaining 20%

---

[1] These sections also apply to unredeemed Pool 1 points.

of Pool 2 payments until the participant separates from the company, unless FIML experiences a change of control.[2]  (*Id.*)

## II. **STANDARD OF REVIEW**

For a case to be properly removed from state court, the federal court must have jurisdiction.  *See* 28 U.S.C. § 1441.  The Court presumes no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction.[3]  *Karnes v. Boeing Co.,* 335 F.3d 1189, 1193 (10th Cir. 2003).  Accordingly, the burden is on the defendant, as the removing party, to demonstrate that the Court has jurisdiction to hear the plaintiff's claim.  *Id.*  To make this showing, a defendant must demonstrate that the plaintiff's complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983).  This determination must be based on the claims asserted by the plaintiff, "unaided by anything alleged in anticipation or

---

[2] If FIML experiences a change of control, participants may receive the entirety of their payments.  (Doc. # 1-4 at 5.)

[3] Contrary to Defendants' contention (Doc. # 12 at 7), the presumption against removal jurisdiction applies where a defendant alleges that a federal statute completely preempts the plaintiff's state claims.  *See Karnes*, 335 F.3d at 1193 (applying presumption against removal where defendant argued that removal was appropriate because plaintiff's claims were completely preempted by the Labor Management Relations Act); *DuCharme v. International Brotherhood of Electrical Workers*, 7 Fed. App'x. 633, 634 (9th Cir. 2001) (applying "strong presumption against removal jurisdiction" where defendant argued that removal was appropriate because plaintiff's claims were completely preempted by the Labor Management Relations Act).

avoidance of defenses which it is thought the defendant may interpose." *Id.* at 9. (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)).

### III. DISCUSSION

The Supreme Court has established that ERISA completely preempts any state law claims that relate to plans governed by ERISA. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). Defendants contend that removal is appropriate because the CIP is an "employee pension benefit plan" under ERISA. (Doc. # 1, ¶ 10.)

An "employee pension benefit plan" subject to ERISA is:

> [a]ny plan . . . maintained by an employer . . . that **by its express terms or as a result of surrounding circumstances**. . .
>
>> (i)  provides retirement income to employees, or
>>
>> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A) (emphasis added); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 405 (10th Cir. 1993).

Additionally, the Secretary of Labor promulgated regulations excluding plans providing bonuses for work performed ("bonus plans") from the definition of "'employee pension benefit plan' . . . **unless such payments are systematically deferred to the termination of covered employment or beyond**, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c) (emphasis added) (internal quotations

omitted); *McKinsey*, 986 F.2d at 405.  In the instant case, it is undisputed that the CIP is a bonus plan.  (Doc. ## 10 at 7; 12.)

To determine whether a bonus plan is an employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and 29 C.F.R. § 2510.3-2(c), courts consider whether – either through its express terms or as a result of the surrounding circumstances – the plan systematically defers payments to the termination of covered employment or beyond.  *See McKinsey*, 986 F.2d at 406 (finding that the express terms of a bonus plan prevented the systematic deferral of income); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 933 (8th Cir. 1999) ("[T]he shares . . . cannot be characterized as 'payments [that] are systematically deferred' to termination. . . . This is true whether one looks to the express language of the [plan] or to the circumstances surrounding the [plan].")  To be systematic, deferral must be more than mere happenstance; the fact that some payments under a plan **may** be made after an employee has retired or left the company does not result in ERISA coverage.  *See Emmenegger*, 197 F.3d at 933 (distinguishing between bonus plan payments made post-termination due to "happenstance," and payments made post-termination due to the plan's express requirements); *see also Weekley v. Thales Fund Management, LLC*, No. 12-CV-2499, 2012 WL 6808523, at *3-4 (S.D.N.Y. Dec. 28, 2012) (unpublished) (plan that distributed bonuses on specified dates did not systematically defer payment to the termination of employment simply because a participant happened to retire before a scheduled distribution date).

In *McKinsey*, the Tenth Circuit found that a plan did not provide for the systematic deferral of payments because its express terms allowed participants to withdraw the vested portion of their allocations at any time during the course of their employment. 986 F.2d at 406. By the plan's express terms, deferral until termination was optional and occurred at participants' discretion; thus, it was not systematic. *Id.*

Conversely, in the instant case, the express terms of the CIP require the systematic deferral of payments to termination. Section 5(b) of the CIP authorizes the payment of only 80% of the Pool 2 "Proved Assets" – and expressly excludes payment of the value of any "Probable Assets" – during the participant's employment. (Doc. # 1-4 at 35.) Section 5(c) does not permit the payments to be made prior to the participant's termination of employment unless the company experiences a change of control. (*Id.* at 35.) By the CIP's express terms, post-employment disbursement of payments is more than mere happenstance; some payments are withheld until termination, and then awarded "automatically, as a matter of course." *See Foster v. Bell Atlantic Tricon Leasing Corp.*, No. 93-CV-4527, 1994 WL 150830, at *3 (S.D.N.Y. April 20, 1994) (unpublished) (plan that did not award post-termination payments "automatically or as a matter of course" did not systematically defer income); *Kaufman v. S & A Rest. Corp.*, No. 3:-06-CV-2192, 2008 WL 2242621 at *7 (N.D. Tex. May 30, 2008) (unpublished) (summary judgment order finding that a stock bonus plan that

allowed participants to redeem a portion of their shares only after their separation from the company deferred payment until the termination of employment).[4]

Thus, the Court finds that, by its express terms, the CIP systematically defers payments until participants separate from the company, and is, therefore, an employee pension benefit plan under ERISA.[5]

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the CIP is an employee pension benefit plan under ERISA, and therefore this Court has original jurisdiction over this

---

[4] The Court is not persuaded by Plaintiff's argument that the CIP does not systematically defer income because it does not "generally defer" income.  (Doc. ## 10 at 9; 13 at 2-3.)  The phrase "general deferral" first appeared in *Hagel v. United Land Co.*, wherein the court applied a "natural language" interpretation of 29 U.S.C. § 1002(2)(A).  759 F. Supp. 1199, 1202 (E.D. Va. 1991).  In subsequent cases, other courts have quoted *Hagel's* "general deferral" language in analyzing "systematic deferral" under 29 C.F.R. § 2510.3-2(c).  *Weekley v. Thales Fund Management, LLC*, No. 12-CV-2499, 2012 WL 6808523, at *3-4 (S.D.N.Y. Dec. 28, 2012) (unpublished); *Foster,* 1994 WL 150830, at *2*.*  However, the preeminent canon of statutory interpretation requires courts to "presume that [the] legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  The Court finds that the plain language of the statute and the regulation is sufficiently clear to guide analysis without interjecting the concept of "general deferral."  *See* 29 U.S.C. § 1002(2)(A).  Therefore, the Court declines to follow *Hagel* and its progeny in undertaking a natural language interpretation and inferring from that interpretation a requirement that income is generally deferred.

[5] Based on this conclusion the Court finds it unnecessary to address Plaintiffs' further argument that the CIP does not fall within the purview of ERISA because of its surrounding circumstances.  *See* 29 U.S.C. § 1002(2)(A) (ERISA governs plans that defer income to termination either by their express terms **or** as a result of the surrounding circumstances); *compare McKinsey*, 986 F.2d at 405-06 (Tenth Circuit examined the express terms of the plan, and not the surrounding circumstances) *with Weekley*, 2012 WL 6808523, at *3 (The court looked at the surrounding circumstances because the parties alleged that the plan did not operate in accordance with its express terms).

matter pursuant to 28 U.S.C. § 1331.  Accordingly, it is hereby ORDERED that Plaintiff's Motion to Remand (Doc. # 10) is DENIED.   It is

FURTHER ORDERED that Defendant's Request for Oral Argument on Motion to Remand (Doc. # 14) is DENIED.

DATED:  June   18   , 2013.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge