IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 13-cv-00167-CMA-KMT

MARK D. BINGHAM,
TONY W. CHURCH,
JEFFERY C. DELANEY,
ANNETTE M. MONTOYA,
RICK L. PARKS,
AMBER D. SHETTRON,
STEWARD G. SQUIRES, and
CHARLES L. ZORIO,

    Plaintiffs,

v.

FIML NATURAL RESOURCES, LLC,
DEVONSHIRE INVESTORS (DELAWARE) LLC, and
DEVONSHIRE INVESTORS, LLC,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

This matter is before the Court on Defendants' Motion to Dismiss Third Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6). (Doc. # 46.) The motion is ripe for the Court's review. For the following reasons, the Court grants Defendants' motion.

## I. BACKGROUND[1]

Plaintiffs are former employees of Defendant FIML Natural Resources, LLC ("FIML"), a company that invests in oil and natural gas exploration and development. (Doc. # 42 at 2, 17.) As a part of their compensation package, Plaintiffs and other high-

---

[1] The following facts are taken from Plaintiffs' Third Amended Complaint. (Doc. # 42.) Additional facts will be provided in the analysis section.

level employees were provided incentive compensation through participation in the Amended and Restated FIML Natural Resources Phantom Carried Interest Plan ("the Plan"). (*Id.* at 2.) The Plan awarded participants "Pool Points," representing ownership interests in two separate pools of assets. (*Id.*) This case concerns only FIML's most recent payments based on Plaintiffs' Pool 2 points. (*Id.* at 7.)

The Plan required FIML to buy Plaintiffs' Pool points if they separated from the company. Plaintiffs resigned on June 29, 2012, and were entitled to a payout. However, the Plan provided for a reduced payment if its Precipitous Decline in Value provision ("PDIV") was triggered. (*Id.* at 17.) Having determined that a PDIV had occurred, Defendants paid Plaintiffs just over $10 million for their Pool 2 points. Plaintiffs allege that no PDIV occurred and that they should have instead received more than $ 29 million. (*Id.* at 19, 21.)

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "The plausibility standard is not akin to a probability requirement, but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

In general, the Court may not consider materials outside of the pleadings on a motion to dismiss without converting the motion to one for summary judgment. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.*

### III. **ANALYSIS**

In the third amended complaint, Plaintiffs allege one claim for relief: to recover benefits due under the terms of the Plan. (Doc. # 42, at 23.) Defendants move to dismiss this claim arguing that the two bases for relief—that FIML improperly (1) reduced benefits under the PDIV provision, and (2) delayed payments—are not

legally plausible. Therefore, Defendants argue, Plaintiffs' claim fails as a matter of law. The Court will address each of these contentions in turn.

## A.     THE PDIV PROVISION

First, Defendants argue that Plaintiffs' claim that FIML improperly reduced benefits under the PDIV provision is based on a facially implausible interpretation of the Plan's unambiguous language.

"In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law." *Admin. Comm. of Wal-Mart Assoc. Health and Welfare Plan v. Willard,* 393 F.3d 1119, 1123 (10th Cir. 2004).[2] In doing so, the Court considers the "common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Id.* "Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Id.* The Court should avoid construing the contract in a manner that would lead to absurd results. *In re Fitzgerald Marine & Repair, Inc.*, 619 F.3d 851, 860 n.12 (8th Cir. 2010).

Plaintiffs do not contend that the Plan is ambiguous. Rather, they argue that Defendants misapplied the Plan's terms to determine that a PDIV had occurred, *i.e.*,

---

[2] The Plan states that it is governed by and must be construed under Massachusetts law. There is a circuit split as to whether an ERISA plan may provide for the application of state law and the Tenth Circuit has yet to weigh in on the question. *Compare Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993), *with Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998). To further complicate matters, neither party takes a position on whether Massachusetts law or federal common law should apply. The Court determines that federal common law rules of contract interpretation should be applied. *See Miller v. Monumental Life Ins. Co.,* 502 F.3d 1245, 1249 (10th Cir. 2007).

that Defendants "improperly focus[ed] on the change in a participant's Purchase Price and not, as required by the Plan, on the change to the Strip Value of the assets." (Doc. # 42, at 23.)  Sections 10(a) and (b) of the Plan govern the determination of whether a PDIV had occurred.  Those sections state:

> (a) In the event of a Precipitous Decline in Value (as defined below) with respect to the assets of any Pool, the Purchase Price of Pool Points pursuant to Section 9(b) shall be reduced for purposes of determining the amount of any payment to be made by the Company to a Participant pursuant to Section 9(b). In such event, the reduction shall equal the difference between the regular Purchase Price value as of the Valuation Date otherwise applicable hereunder (the "<u>termination date value</u>") and a pro forma valuation as of such date (the "<u>pro forma determination date value</u>"). The pro forma determination date value will be computed by the same firms (e.g. the Company and NSAI, or a similar independent third party reservoir engineering firm approved by the Board) using the same Strip Value determination methodology (including with respect to the inclusion or exclusion of any Probable Assets from the calculation of Strip Value) and the applicable commodity pricing as of the last day of the calendar quarter next succeeding the Valuation Date applied to the reserves of the Proven Assets and the Probable Assets used in the calculation of the termination date value, excluding any reserve adjustments to the Proved Assets or Probable Assets other than through computational errors and excluding any impairments arising from capital invested subsequent to the applicable Termination Date.
>
> (b) A "<u>Precipitous Decline in Value</u>" shall be deemed to have occurred with respect to a Pool when the decline from the termination date value to the pro forma determination date value is greater than 30% with respect to such Pool. Notwithstanding the foregoing, the value of a Pool (the sum of Strip Value of such Pool plus all other assets net of liabilities (calculated in accordance with Section 4(a)(v) and adjusted consistent with the example computations set forth in Exhibit B), net to the interest of the Company in such Pool, valued at cost) shall not be reduced pursuant to this Section 10 below the aggregate amount of equity capital invested in the Company by FILPV or other equity owners of the Company that is allocated to such Pool, and in no event shall a payment ever be due from a Participant to the Company by reason of the provisions of this Section 10.

(Doc. # 37-2, at 19) (underscoring in original).

Looking to the plain language of the Plan, a PDIV occurs "when the decline from the termination date value to the pro forma determination date value is greater than 30% with respect to such Pool." (*Id.*)  The Plan also provides a definition for "termination date value", which is "the regular Purchase Price value as of the Valuation Date otherwise applicable hereunder." (*Id.*)  In the definition section of the Plan, Purchase Price is defined as:

> an amount equal to (i) the vested percentage of a Participant's Pool Points in such Pool multiplied by an amount equal to (A) the sum of **the Strip Value** of such Pool plus all other assets net of liabilities . . . net to the interest of the Company in such Pool, valued at cost as of the applicable Valuation Date, less (B) the Recoverable Amount . . . , less (ii) the sum of the aggregate amount of all payments previously made to such Participant . . . .

(Doc. # 37-2, at 5) (emphasis added).  According to the plain language of the Plan, the Strip Value is one component of the formula to determine the Purchase Price as of the Valuation Date, *i.e.*, the termination date value as defined by Section 10(a).

Pointing to the language "with respect to the assets of any Pool" in the first sentence of Section 10(a) and "with respect to such Pool" in the first sentence of Section 10(b), Plaintiffs argue that the Plan "requires a precipitous decline in the value of assets." (Doc. # 54, at 6).  However, this interpretation ignores both the Plan's plain language defining the termination date value as the "regular Purchase Price" and the plain language indicating that Section 10(b) defines a PDIV.  *See* (Doc. # 37-2, at 19) ("In the event of a Precipitous Decline in Value **(as defined below)** with respect to the assets of any Pool . . . .") (emphasis added).  Moreover, although the definition section defines a Pool as a "grouping

6

of assets," Section 10(b) states that with regard to a PDIV, the value of a pool is "the sum of the Strip Value of such Pool plus all other assets net of liabilities . . . ." Similarly, the phrase "Strip Value determination methodology" in the third sentence of Section 10(a) does not support Plaintiffs' argument that, in order to determine whether a PDIV occurs, one must focus on the Strip Value of assets. Instead, that phrase indicates that the Strip Value would remain a constant in the pro forma calculation.

The Court finds that the PDIV provision is unambiguous when read in conjunction with the Plan's definition of Purchase Price. The plain and unambiguous language of the Plan does not support the interpretation asserted by Plaintiffs. Thus, the Court dismisses Plaintiffs' claim that FIML improperly reduced benefits under the PDIV provision pursuant to Fed. R. Civ. P. 12(b)(6).[3]

## B.   DELAYED PAYMENTS

Plaintiffs also allege that Defendants improperly delayed payment under the Plan by paying the Pool 2 benefits on November 29, 2012. (Doc. # 42, at 20.) In their response, Plaintiffs offer an interpretation of the Plan that they allege made the payments due on August 29, 2012. Again, that interpretation is contrary to the plain language of the Plan and fails as a matter of law.

---

[3] The Court also rejects Plaintiffs' argument that their interpretation best reflects the Plan's purpose because that purpose cannot override the plain language of the Plan. *See, e.g., Aramony v. United Way of Am.*, 254 F.3d 403, 412-14 (2d. Cir 2001). Likewise, the Court disagrees that it should contravene a plain language reading of the PDIV provision because such a reading may result in different PDIV determinations for different participants. Indeed, the Plan allows for different PDIV determination based on the Purchase Price, which takes into consideration, *inter alia*, a participants' individual ownership in the Pool and grant date. Contrary to Plaintiffs' argument, these considerations do not lead to an absurd result.

7

> Section 9(b), which governs the timing of payments, states:
>
> The Company shall purchase all such vested and not forfeited Pool Points with a cash payment at a closing held at the offices of the Company **on the first business day occurring on or after the sixtieth (60th) day after the last day of the succeeding calendar quarter after the Termination Date.**

(Doc. # 37-2, at 17) (emphasis added).

To determine the pertinent date, one must work backward through the operative text, beginning with the Termination Date, which both parties agree is June 29, 2012. That date is in the second quarter; therefore, the "succeeding calendar quarter" would be the third quarter. The "last day" of the third quarter is September 30, 2012. The "sixtieth (60th) day" after September 30, 2012, is November 29, 2012, which is a "business day."

> Plaintiffs latch on to language that appears earlier in this provision that states:
>
> If a Participant becomes a Terminated Participant . . . then the Company shall be obligated to purchase the entire vested and not forfeited portion of the Pool Points granted to such Terminated Participant in all Pools for a Purchase Price payment for the Tracked Investment in each such Pool as of the last day of the **calendar quarter preceding** the Termination Date.

(*Id.*) (emphasis added). However, it is clear from the plain language that this sentence does not refer to the date that payment is due to a Terminated Participant, but rather, refers to the date from which the payment is calculated. The plain language dictates that payment was due to Plaintiffs on November 29, 2012, the date on which they were ultimately paid.

The Court further notes that Plaintiffs have filed four versions of their complaint. (Doc. ## 3, 4, 27, 42.) Because the Court has determined that Plaintiffs have failed to state a claim as a matter of law, an amendment of Plaintiffs' complaint would be futile.

*See Rivas v. U.S. Bank,* 486 F. App'x 752, 753 (10th Cir 2012) (order and judgment) (affirming dismissal with prejudice where the plaintiff's claims failed as a matter of law). Accordingly, Plaintiffs' sole claim is dismissed with prejudice. *See Brerton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting leave to amend would be futile.").

## IV. **CONCLUSION**

Based on the foregoing, it is ORDERED that Defendants' Motion to Dismiss Third Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) (Doc. # 46) is GRANTED. It is

FURTHER ORDERED that the sole claim in the complaint is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that this case is DISMISSED in its entirety.

DATED: February  13 , 2014

BY THE COURT:

*[signature: Christine M. Arguello]*

CHRISTINE M. ARGUELLO
United States District Judge